## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

**JERALD L. HENRY**                                                            **PLAINTIFF**

**V.**                                        **NO. 2:23-CV-00063-JTK**

**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

## ORDER

### I.    Introduction:

Plaintiff, Jerald L. Henry ("Henry"), applied for Title II disability benefits on October 10, 2021. (Tr. at 15). In the application, Henry alleged disability beginning on July 31, 2019. *Id*. The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Henry's application by written decision dated December 12, 2022. (Tr. at 15-30). The Appeals Council declined to review the ALJ's decision. (Tr. at 1-6).

The ALJ's decision now stands as the final decision of the Commissioner, and Henry has requested judicial review. For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

### II.   The Commissioner's Decision:

The ALJ found that Henry had not engaged in substantial gainful activity since

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

the alleged onset date of July 31, 2019.[2] (Tr. at 17). At Step Two, the ALJ found that Henry had the following severe impairments: obstructive sleep apnea, migraine headaches, obesity, hypothyroidism, neuropathy, posttraumatic stress disorder (PTSD), major depressive disorder, and anxiety. *Id.*

At Step Three, the ALJ determined that Henry's impairments did not meet or equal a listed impairment. (Tr. at 18-20). Before proceeding to Step Four, the ALJ determined that Henry had the residual functional capacity ("RFC") to perform work at the medium exertional level, with some additional limitations: (1) no direct sunlight exposure; (2) no concentrated vibration exposure; (3) no more than moderate noise level in the workplace; (4) no more than frequent overhead reaching; (5) no exposure to hazards; (6) no driving or operation of dangerous machinery; (7) he can understand, remember, and carry out simple, but not complex, instructions; (8) he can perform work where no interaction with the general public is required; and (9) no more than occasional changes to the work place setting are required. (Tr. at 20).

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

At Step Four, the ALJ determined that Henry is unable to perform any past relevant work. (Tr. at 28). Utilizing the testimony of a Vocational Expert ("VE"), the ALJ next determined that, based on Henry's age, education, work experience, and RFC, he was able to perform a number of jobs in the national economy. (Tr. at 29-30). Therefore, the ALJ concluded that Henry was not disabled. *Id*.

### III.  <u>Discussion</u>:

#### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of

administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B. Henry's Arguments on Appeal

Henry contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that: (1) the ALJ did not properly evaluate Henry's subjective complaints; (2) the RFC did not incorporate all of Henry's limitations; and (3) the ALJ erred at Step Five. The Court agrees that the RFC did not fully incorporate Henry's limitations from mental impairments.

Henry served twenty years in the armed forces, and he was deployed in active combat for some of that. (Tr. a 1064-1068, 1114-1125). He suffered from PTSD, anxiety, and depression related to his time in service. *Id*. Objective questionaries from his mental health providers revealed moderate to severe PTSD and anxiety. (Tr. at 449-455, 503-506, 1114-1125). Henry experienced flashbacks, nightmares, and suicidal ideation, and had trouble sleeping. *Id*. Henry isolated himself from

others and had anger outbursts. *Id*. He drank alcohol regularly. *Id*.

Henry was not always consistent with taking his mental health medications, but he also added that drowsiness was an unwanted side effect. Poor sleep and not feeling rested were problems for Henry. *Id*.

Although the ALJ stated that Henry could perform daily activities, in 2022, Henry stated that his mental health had so deteriorated that he could not do much around the house and no longer engaged in hobbies.[3] (Tr. at 518-524).

A consultative mental health examiner found that Henry would be impaired in mental function for 15% of the workday. *Id*. He could not maintain attendance or work within a schedule, and he would need special supervision. *Id*. He could not maintain socially appropriate behavior or respond appropriately to change. *Id*. Essentially, the examiner opined that Henry could not work due to mental limitations. The ALJ discounted this opinion. (Tr. at 26-27).

The Disability Determination Services medical expert reviewed the records in May 2022, and opined that Henry would need no more than incidental interpersonal contact; no more than rote tasks with few variables; and supervision that is simple, direct, and concrete. (Tr. at 84). The ALJ did not adopt these limitations in the RFC.

---

[3] Inability to perform daily activities may preclude work. See *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005).

(Tr. at 20). The RFC stated no interaction with the general public, but it did not mention coworkers or supervisors. *Id.* The RFC did not mention the supervision required. And it did not address attendance or persistence or pace limitations. The ALJ did contemplate more robust mental restrictions in a work setting, because he asked the VE a hypothetical suggesting inability to focus or concentrate, absenteeism, and being off task for two hours in the workday. (Tr. at 60). The VE said that based on that hypothetical, one which better encapsulated Henry's issues, there would be no competitive work available for Henry. *Id.*

An RFC is meant to paint an accurate picture of the claimant's work profile base on all credible limitations.[4] The fine details of the RFC matter, as changes in the RFC and the hypothetical questions impact the VE's opinion about available work. Here, important RFC restrictions (verified by the consultative examiner and the DDS experts) were missing, so reversal is warranted.

## IV. <u>Conclusion</u>:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The RFC did not incorporate all of Henry's credible limitations. The decision is hereby reversed and the case remanded with

---

[4] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

instructions for further review.

IT IS SO ORDERED this 10th day of January, 2024.

_____

UNITED STATES MAGISTRATE JUDGE